UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEMONT WAITES, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 4:12-CV-1152 (CEJ) |
| IAN WALLACE, | ) ) ) |
| Respondent. | ) |

**MEMORANDUM**

This matter is before the Court on the petition of Demont Waites for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

I.  **Procedural Background**

Petitioner Demont Waites is presently incarcerated at the Southeast Correctional Center pursuant to the sentence and judgment of the Circuit Court of the City of Saint Louis. On September 30, 2005, a jury found petitioner guilty of one count of first-degree murder, three counts of first-degree assault, one count of second-degree robbery, and four counts of armed criminal action. The trial court sentenced petitioner to two terms of life imprisonment — one without the possibility of parole; six 25-year terms, and one 15-year term, all to run concurrently. Judgment, Resp. Ex. A at 97-102. Petitioner appealed his conviction and, on November 21, 2006, the Missouri Court of Appeals affirmed. State v. Waites, No. ED87289 (Mo. Ct. App. Nov. 22, 2006) (Waites I) Resp. Ex. D.

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied following an

evidentiary hearing. On October 18, 2011, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Waites v. State, No. ED95580 (Mo. Ct. App. Oct. 18, 2011) (Waites II) Resp. Ex. H. On June 25, 2012, petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254.

**II.   Factual Background**

On August 17, 2001, Steven Davis, Jermaine Thomas, and Brandon Daily were sitting on Daily's front porch. Rosine Moore was working on a car in front of the house. At about 10:30 p.m., a man approached the street from a gangway and fired three or four shots from an automatic gun at a group of people across the street, hitting Rosine Moore in the foot. The shooter then turned and began firing at the group on the porch. Daily was shot in the leg, Davis was shot in his left hand and buttock, and Thomas was fatally shot in the left side. Daily saw the shooter get into the passenger seat of a white car. Several days later, Daily and Davis separately viewed photographic line-ups and identified petitioner as the shooter.

Petitioner's first trial, in February 2004, resulted in a hung jury. Docket, Resp. Ex. A at 5-6.

Additional facts will be included as necessary to address petitioner's claims.

**III.   Legal Standard**

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

3

To preserve a claim for relief, "a habeas petitioner must have raised both the factual and legal bases" of his claim to the state court, and afforded that court a fair opportunity to review its merits. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (citations omitted). Where a claim is defaulted, a federal habeas court will consider it only if the petitioner can establish either cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. Id. To establish "cause" for the default, a petitioner generally must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, the petitioner "must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis omitted).

**IV. Discussion**

**Ground 1: Trial Court's Refusal to Allow Petitioner to Testify**

Petitioner asserts that the trial court violated his constitutional right to testify on his own behalf.

The defense rested after calling one witness and the jury was excused for the evening. The next morning, the court gave the final instructions to the jury and the lawyers made closing arguments. Docket Sheet, Resp. Ex. A at 10. The jury then took a short break before starting deliberation. During the break, the trial court addressed petitioner regarding his decision not to testify and petitioner stated that he had expected to testify that morning. Resp. Ex. C at 13-17. The court asked

petitioner if he remembered that after the defense witness testified, the court asked his lawyer whether "he had any other evidence and he said no, the Defense rests." Petitioner remembered the exchange but said he did not understand what the term "rests" meant. He told the court that he decided not to testify at his first trial after talking with his lawyer. He told his lawyer on the first day of his second trial that he planned to testify, but his lawyer never addressed the issue again before resting. Counsel declined to answer the court's questions, citing attorney-client privilege.

At sentencing, the trial court stated: "[B]ased on the information I have from presiding at trial and . . . the decisions [petitioner] made in his first trial, I find that [petitioner] did understand that he had the right to testify in this trial and he had the right not [to] testify in this trial." The court went on to find that petitioner made "a free and voluntary decision not to testify in this case." Resp. Ex. C at 18.

On appeal, petitioner argued that the trial court violated his constitutional right to testify on his own behalf by failing to reopen evidence to allow him to testify. Because petitioner had not raised this claim in his motion for a new trial, the Missouri Court of Appeals reviewed for plain error. Finding none, it affirmed.

Until recently, there was a split within the Eighth Circuit regarding whether plain-error review by a state appellate court waived a procedural default, and courts were permitted to choose which line to follow. Clark v. Bertsch, 780 F.3d 873, 876 (8th Cir. 2015) (comparing Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996) and Hayes v. Lockhart, 766 F.2d 1247, 1253 (8th Cir. 1985) (state court's plain-error review does not excuse procedural default) with Thomas v. Bowersox, 205 F.3d 699, 701 (8th Cir. 2000), Bannister v. Armontrout, 4 F.3d 1434, 1445 n.6 (8th Cir. 1993) and Williams v. Armontrout, 877 F.2d 1376, 1379 (8th Cir. 1989)

(state court's plain-error review permits federal review)). In 2011, the Eighth Circuit, sitting *en banc*, directed that, in the event of an intra-circuit split, future panels were to "determine and follow the earliest precedent." Id. (citing Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011)). The court then determined that the earliest controlling panel opinion on the effect of plain-error review is Hayes, which held that such claims are procedurally defaulted an unreviewable, absent cause and prejudice. Id. (quoting Hayes, 766 F.2d at 1253).

Petitioner does not attempt to excuse his procedural default on the basis of cause and prejudice or manifest injustice. Rather, he argues that the Missouri Court of Appeals did not confine itself to plain-error review and thus his claim is not barred by procedural default. In support of this argument, he cites Jones v. Steele, No. 4:06CV767RWS, 2010 WL 618474, at *8 (E.D. Mo. Feb. 18, 2010), in which the court found that a petitioner's claim was entitled to federal review because "[t]here was nothing 'limited' about the Missouri Court of Appeal's review of Jones' Faretta claim." Id. at *8. The state court opinion "spent more than two pages discussing the legal standard for Faretta claims and its application to Jones' case . . . and did not rest on state procedural rules." In this case, the Missouri Court of Appeals did not reach the merits of the constitutional claims petitioner presented and confined itself to plain-error review. Petitioner's claim in ground 1 is procedurally defaulted.

### Grounds 2 and 3: Ineffective Assistance of Counsel

Petitioner asserts that counsel was ineffective for failing to call four witnesses to testify on his behalf.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective

standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Paulson v. Newton Corr. Facility, Warden, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted) ("Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome.")

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, –––U.S. –––, 131 S. Ct. 1388, 1410 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. Harrington v. Richter, ––– U.S. –––, 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786.

Id. at 831-32.

## Failure to Call Alibi Witnesses

In Ground 2, petitioner contends that trial counsel was ineffective for failing to call witnesses who would have testified that he was home with his mother when the shooting occurred.

Petitioner's girlfriend Twanna Reece and her mother Celestine Reece testified at the post-conviction evidentiary hearing. See Petition at 11-12 (citing PCR transcript) [Doc. #1-1]. Twanna testified that, at the time of the shooting, she was talking on the telephone with petitioner, who was at his mother's home. Twanna's mother testified that she heard the shootings and took the phone from her daughter to tell petitioner to hang up so that she could call the police.

Petitioner's trial counsel also testified at the evidentiary hearing. He testified that he generally did not like to call mothers or girlfriends to testify. He believed that they are more likely than anyone else to lie for a defendant, and jurors assume that the defendant is guilty if they think his witness is lying. Waites II at 3. Counsel also stated that he chose to pursue a defense based on mistaken identity and he thought the alibi testimony would distract jurors from his preferred defense. See id. Finally, he stated that he had been unable to serve Twanna and Celestine Reece with subpoenas. He and his investigator had looked for them "for months" to no avail because they "ducked us and ducked us." Id. at 6. At the post-conviction hearing, the women acknowledged that "they moved around a lot" after the shootings. Id. at 5. The motion court denied petitioner's ineffective-assistance claim with respect to Twanna and Celestine Reece because he did not establish that they could have been located through a reasonable investigation. The Missouri Court of Appeals affirmed.

Factual findings by the state court are accorded a presumption of correctness

that can be set aside only be clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner presents no rebuttal evidence here and the court must credit the state court's finding that the Reeces could not be located for service of subpoenas. Counsel cannot be found to render constitutionally ineffective assistance for failing to locate witnesses despite reasonable investigation. See Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997) (given "numerous efforts" to locate alibi witnesses, counsel's representation cannot be said to have fallen "below an objective standard of reasonableness.") Petitioner's claim regarding Twanna and Celestine Reece will be denied.

Petitioner also asserts that counsel should have called his mother, Debra Waites, as a witness on his behalf. At the post-conviction hearing, she testified that her son told her about the shooting while he was on the phone with Twanna and her mother. However, she also testified that this conversation occurred at 7:00 or 8:00 in the evening, while it was still light outside. Waites v. State, Resp. Ex. H at 6. The evidence at trial established that the shooting occurred at 10:25 p.m. The post-conviction court found, and the appellate court affirmed, that trial counsel made a strategic decision not to call Ms. Waites.

"Decisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). In order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to . . . call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. (alteration in original; citation omitted). A decision not to call a particular witness is

9

"presumed to be one of trial strategy unless clearly shown to be otherwise." Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006) (internal quotation and citation omitted). In this case, counsel articulated a strategic reason not to call petitioner's mother as a witness — he thought the jury could conclude she was biased. Furthermore, her testimony that petitioner was home at 7:00 or 8:00 p.m. did not establish an alibi for him at 10:25 p.m. Petitioner's ineffective-assistance claim with respect to Ms. Waites is without merit. Ground 2 will be denied.

### **Failure to Call Edward Johnson**

Mr. Johnson testified as a witness for the prosecution at petitioner's first trial, which ended in a hung jury. Petition at 13. Petitioner asserts that counsel was ineffective for failing to call him to testify at the second trial.

Mr. Johnson testified at the first trial that he had spoken to petitioner about an hour before the shooting. He was in the street working on his car when he saw two men appear in the gangway. He described the shooter as slim and said that petitioner was stocky. Id. at 14-15. He also stated that the shooter was not wearing the clothes he had seen petitioner wearing earlier. Trial counsel testified at the post-conviction hearing that he decided not to call Mr. Johnson to testify at the second trial because, despite having potentially helpful testimony to offer, Mr. Johnson also had evidence that was damaging to petitioner's case. In particular, Mr. Johnson had identified petitioner as the shooter from a photo spread and in a lineup. Waites II at 7-8.

The postconviction court and appellate court found that counsel's decision not to call Mr. Johnson as a witness was reasonable trial strategy. Weighing the relative benefits and risks of the anticipated testimony of a specific witness is a

matter of trial strategy. Petitioner has not established that the state court decisions are contrary to or an unreasonable application of Strickland. Ground 3 will be denied.

### Ground 4: Admission of Hearsay Testimony

Over petitioner's objection, the trial court allowed the prosecutor to question Detective Douglas, who investigated the shooting, about phone calls he received from women identifying themselves as Twanna Reece and her aunt. Douglas testified that the callers told gave him two locations where petitioner could be found. State v. Waites at 8. Although Douglas did not go to those locations, he used the information to determine petitioner's last name and current address. Petitioner asserts that the evidence was inadmissible hearsay and that the reference to one of the locations, a public housing project, implied that he was a member of a street gang. On direct appeal, the Missouri Court of Appeals held that the statements were not hearsay because they were offered to explain Detective Douglas's subsequent actions. Id. at 9 ("Out-of-court statements used to explain police conduct, and to supply background and continuity, are not hearsay and are admissible.")

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), and admissibility of evidence is generally a matter of state law. See Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992) ("We are bound by the Arkansas Supreme Court's ruling [that the challenged evidence was not hearsay], because state law governs questions concerning the admissibility of evidence.") The only question the court may consider is whether the challenged evidentiary ruling resulted in a constitutional violation. Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir.

11

1998). Petitioner does not assert that the evidentiary ruling resulted in the violation of a constitutional right. Even if asserted, such a claim would fail because he cannot establish that admission of the evidence rendered the trial fundamentally unfair. Oliver v. Wood, 96 F.3d 1106, 1108 (8th Cir. 1996) (admission of hearsay statement violates due process rights "only if the court's error in admitting the evidence was so obvious that it 'fatally infected the trial and rendered it fundamentally unfair.'") (quoting Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995)). Petitioner's Ground 5 will be denied.

### Ground 5: Prosecutor's Voir Dire Questions

During voir dire, the prosecutor noted the prevalence of scientific evidence in popular television shows and asked the panel members, over defense counsel's objection, whether they would require the State to present a videotape, fingerprint evidence, DNA, or the murder weapon in order to reach a guilty verdict. Petitioner argues that this line of questioning was intended to commit the jurors to forgiving the State's lack of evidence in violation of his right to a fair and impartial jury.

"Voir dire 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'" Morgan v. Illinois, 504 U.S. 719, 729 (1992) (quoting Ristaino v. Ross, 424 U.S. 589, 594 (1976)). "The Constitution, after all, does not dictate a catechism for *voir dire,* but only that the defendant be afforded an impartial jury." Id. "[T]here may be circumstances where a party's manner of conducting voir dire renders a jury []partial and thereby triggers a Sixth Amendment violation." Hobbs v. Lockhart, 791 F.2d 125, 129 (8th Cir. 1986). However, a prosecutor's questions exploring whether jurors can return a guilty verdict based on circumstantial evidence do not give rise to a constitutional

12

violation. See id. at 129-30 (no violation where generic examples of circumstantial evidence were not linked to the particular evidence to be presented).

On direct appeal, the Missouri Court of Appeals found that the prosecutor's line of questioning was "an attempt to ferret out preconceived prejudices as to certain kinds of evidence," rather than attempt to commit jurors to a particular outcome. Waites I at 11. Petitioner has not established that this decision was contrary to or an unreasonable application of existing federal law.

### IV. Conclusion

For the reasons discussed above, the court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right and the court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of July, 2015.